Ethan J. ALLEN, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 79 C 3812.

United States District Court,
N. D. Illinois, E. D.

July 6, 1982.

Robert A. Maloney, Chicago, Ill., for plaintiffs.

Gail C. Ginsberg, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., Angelynn C. Hall, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This case is currently before the court on plaintiffs' application for attorney's fees submitted pursuant to the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). That section provides as follows:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses [including attorney's fees], in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

On December 4, 1981, plaintiffs, Ethan J. Allen and Marie T. Allen, filed their peti-

tion for attorney's fees, requesting that the court award them $2,383.50. After the defendant United States of America opposed that request, plaintiffs filed an amended request for fees, increasing both the total amount of hours claimed and the claimed hourly compensation rate. The amended request asks for a total award of $11,843.75.

The following is the procedural history of this case leading up to plaintiffs' current request for fees. On September 13, 1979, plaintiffs filed their complaint, requesting a refund of alleged overpayments of individual income taxes and the abatement of certain penalty assessments made against plaintiff Ethan Allen. Defendant responded by answering the complaint and filing a counterclaim against the Allens and two other named individuals. After some discovery and, apparently, negotiations between the parties, the parties agreed to settle the litigation. Under the terms of the settlement, plaintiffs dismissed their complaint against the government, and the government dismissed its counterclaim against the plaintiffs.[1] The docket entry for September 15, 1981, notes "Cause will be dismissed by agreement, upon filing of stipulation and order." The stipulation and order referred to were never filed, and at a subsequent status hearing held on December 3, 1981, the controversy between the Allens and the government was dismissed on an oral motion by the government. The parties do not dispute that the settlement agreement was extremely favorable for plaintiffs, and therefore they may be considered the prevailing parties in this litigation.

The United States has three arguments against allowing plaintiffs' request for attorney's fees. First, defendant argues that plaintiffs are not entitled to an award of fees that were incurred before October 1, 1981, the effective date of the Equal Access to Justice Act. Second, the government suggests that the special circumstances of this case would make an award of fees

unjust. Finally, the defendant claims that it was substantially justified in maintaining its position in this case and so an award of fees would be improper. The government also argues that plaintiffs' amended claim is untimely, because it was not filed within thirty days of the final judgment in this action. The court will first address the government's claim that its position in the underlying litigation was substantially justified.

The "substantially justified" standard was carefully considered by Congress when the Equal Access to Justice Act was passed. The House Report contains the following explanation:

"The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. . . .

"The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing."

H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 10–11, reprinted in [1980] U.S.Code Cong. & Ad.News 4953, 4984, 4989–90. In order to determine whether or not the government's case here was reasonable, it is necessary to carefully review the facts of the underlying dispute which culminated in this litigation.

This case arose out of the failure of two organizations, Medical Health Testing Centers, Inc. ("MHTC") and Northbrook Clinical and X-Ray Laboratories, Inc. ("Northbrook Clinical") to pay taxes withheld from their employees during 1974 and 1975. Until June 1, 1973, Northbrook Clinical was a sole proprietorship, owned and run by plaintiff Ethan Allen. On that date, Northbrook Clinical was acquired by Associated Medical Labs ("AML"), located in Park Ridge, Illi-

---

1. The government's counterclaim against the other two individuals, Norman Paradise and Seymour Ross, remains pending. According to

the docket entries, discovery involving that counterclaim is proceeding.

nois. On July 13, 1973, AML also acquired MHTC. Both Northbrook Clinical and MHTC were operated as divisions of AML, rather than as subsidiary corporations having identities separate and distinct from the parent corporation.

During at least part of the period that MHTC and Northbrook Clinical allegedly failed to make the required tax payments, defendant Ethan Allen was a member of AML's board of directors and served from time to time as chairman of the board and treasurer of the corporation. He was also listed as one of the persons authorized to sign checks drawn on one of AML's accounts. After acquiring MHTC and Northbrook Clinical, AML collected all their receipts and paid out their wages and expenses. AML prepared all the federal tax withholding forms for its divisions and made some tax deposits.

In addition, Ethan Allen was named as president of Northbrook Clinical when it was first formed as a corporation. Until May 1974, he was authorized to write checks on Northbrook Clinical's account. The record shows that in late August 1974, Ethan Allen was removed from his corporate offices with both Northbrook Clinical and AML. After that date, he no longer had any authority to make any payments to the IRS or anyone else.

■ Penalties were assessed against Mr. Allen, for the failure of MHTC and Northbrook Clinical to pay the withholding taxes, under 26 U.S.C. § 6672, which provides as follows:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

The purpose of Section 6672 is "to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." *Pacific National Insurance Co. v. United States,* 422 F.2d 26, 31 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970).

■ Discovery during the course of this litigation evidently showed that Mr. Allen, despite his positions as officers of the various corporations, was not the person actually responsible for the failure to pay the taxes. When that fact became known to the government, it agreed to settle the outstanding litigation with Mr. Allen. Under the terms of the settlement, the government retained the nearly $1,800. that the Allens had already paid on the penalty assessments, in return for dismissing the counterclaim totaling almost $21,000.

Plaintiffs argue that, despite the facts outlined above, the government was not substantially justified in pressing this litigation. Plaintiffs claim that the penalties were assessed against Mr. Allen based purely on his position as an officer of Northbrook Clinical and AML. Plaintiffs point to *Dudley v. United States,* 428 F.2d 1196 (9th Cir. 1970), for the proposition that corporate officeholders are not *per se* liable for the corporation's failure to pay its employees' withholding taxes. While plaintiffs' position would be well taken if the issue here was Allen's ultimate liability for the tax payments, it does not necessarily indicate that the government's litigation position was unreasonable. Though the facts might ultimately show that Mr. Allen was not actually responsible for the tax payments, his positions as president, chairman of the board, and treasurer of the relevant corporations, plus the fact that he was authorized to write checks on the corporate accounts, could certainly lead, as an initial matter, to a reasonable assumption that he had some responsibility for making the payments.

As a second argument, plaintiffs suggest that the government's position in this litigation was unreasonable because such a long period was involved from the time the penalty assessments were made until this suit

was finally dismissed. Plaintiffs claim that the facts which ultimately led to the settlement of the suit on December 3, 1981, were known to .the government as early as July 1978, when the Allens filed their administrative request for a refund and abatement of the assessments. Attached to the claim was Mr. Allen's statement in which he outlined the facts demonstrating that he was not responsible for payment of the taxes at issue, despite the appearances to the contrary.

This argument too is unconvincing. The government clearly cannot be faulted for failing to remove the penalty assessments based purely upon the self-serving affidavit of Mr. Allen. Contrary to the Allens' position, it would have been unreasonable for the government to give up its case without some independent corroboration of the factual statements in Mr. Allen's statement. Apparently, that necessary support was found in the discovery phase of this litigation, with the result that settlement terms were agreed to. In sum, the court finds that the government's actions in making the initial penalty assessments, and its prosecution of this suit until its settlement, were reasonable and substantially justified.

■ In addition to the court's conclusion that the government's position in the underlying litigation was substantially justified, the court believes that there is a second adequate and independent reason for denying the Allens' request for attorney's fees. As is clear from the court's recitation of the procedural history of this case, the great majority of the Allens' attorney's fees were incurred before the October 1, 1981, effective date of the Equal Access to Justice Act. In fact, not counting the time spent by the Allens' attorney in preparing the two fee applications and supporting memoranda of law, only one half hour of the total of approximately 75 hours used in the underlying litigation was spent after October 1. In addition, it is clear that all the substantive work was completed before September 15, 1981. On that day, the government's attorney reported that the parties had reached agreement and the case involving the Allens would be dismissed. Relying on those facts, the government argues that the doctrine of sovereign immunity precludes an award of attorney's fees for work done before the effective date of the Act.

Section 208 of the Equal Access to Justice Act provides as follows:

"This title and the amendments made by this title shall take effect of [sic] October 1, 1981, and shall apply to any adversary adjudication, as defined in section 504(b)(1)(C) of title 5, United States Code, and any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is pending on, or commenced on or after, such date."

The Allens argue that because their civil action was technically "pending on" October 1, 1981, they are entitled to receive all attorney's fees they incurred in the prosecution of their litigation, whether the fees were incurred before or after October 1.

A recent decision of the U. S. Court of Claims provides this court with guidance in resolving the parties' arguments. In *Brookfield Construction Co. v. United States,* 661 F.2d 159 (Ct.Cl.1981), the court reviewed the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* The question directly addressed in that case was whether a contractor, who elected to proceed under the Act, could recover interest on its subsequently allowed claims for periods of time prior to the effective date of the Act, or whether the contractor could only receive interest for the period after the effective date. The Court of Claims concluded that interest was only available for the latter periods. In reaching its conclusion, the court relied on three separate factors.

First, the court recognized that if it allowed the claims for interest, a very large liability would be placed on the government; a liability that was not acknowledged in the Act's legislative history. Supreme Court precedent strongly suggests that courts should not read a statute to place large liabilities on the federal government unless the words or intent of the statute is clear. *See United States v. Za-*

*zove,* 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601 (1948); *Pine Hill Coal Co. v. United States,* 259 U.S. 191, 42 S.Ct. 482, 66 L.Ed. 894 (1922). Second, the Court of Claims noted that allowing pre-Act interest would not serve the legislative purpose of the interest section. Its purpose was to speed resolution of contract disputes between the Government and contractors. Penalizing delay that occurred at a time when there had been no incentive to expedite action would not serve to speed resolution in the future. Finally, the Court of Claims concluded that its resolution of the issue was more harmonious with the long-established principle that the Government would not waive its sovereign immunity from interest claims, unless Congress clearly stated that that was its intention. *See Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

The three factors recognized in *Brookfield Construction* are present in this case as well, and they all suggest that attorney's fees incurred before the effective date of the Equal Access to Justice Act should not be awarded. This case itself demonstrates that a large liability could be placed on the government. In their amended petition, the Allens are attempting to recover all the attorney's fees they incurred in the course of three years of litigation. The cost estimate of the Equal Access to Justice Act, prepared by the Congressional Budget Office, does not show an immediately large and steady outlay of funds throughout the life of the Act, as would be expected if the Allens' position were accepted. Rather, the cost estimate shows the outlays starting low in the fiscal year 1981 and increasing sharply in each of the two following years. *See* H.R.Rep.No.96–1418, *supra,* at 21. To the extent that Congress' intent can be inferred from those figures, it appears that Congress did not mean for litigants to receive a windfall award of attorney's fees incurred before the Act took effect.

Allowing pre-Act fees would not promote the intent of the Equal Access to Justice Act. Both parties here agree that the purpose of the Act is "to reduce the deterrents and disparity [of defending against unrea-sonable governmental action] by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States." H.R.Rep.No.96–1418 at 6, U.S. Code Cong. & Admin.News 1980, p. 4984. It is clear that individuals who challenged governmental action before the effective date of the Act were, in fact, not deterred by the high costs of litigation from protecting their interests against the government. An award of attorney's fees to those litigants would not contribute to solving the problems identified by Congress.

Finally, the Congress did not expressly provide that pre-Act attorney's fees should be paid to litigants who prove victorious in suits involving the government. To the contrary, the Allens' argument relies on statutory language at least as ambiguous as that contained in the Contract Disputes Act. The court here reaches a conclusion similar to that reached by the Court of Claims, and holds that the Allens are not entitled to an award of attorney's fees incurred before the effective date of the Equal Access to Justice Act.

The Allens cite several cases which they claim support their position that retroactive attorney's fees awards are proper. *See Hutto v. Finney,* 437 U.S. 678, 695, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978); *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Dawson v. Pastrick,* 600 F.2d 70, 78 (7th Cir. 1979). Each of those cases involves attorney's fees awarded under various civil rights legislation, and each does hold that fees incurred before the effective dates of the various provisions may properly be awarded to prevailing litigants. However, none of those cases involves an award of attorney's fees against the federal government; rather, they involve awards in suits against local governing bodies or private individuals. None of the three factors identified in *Brookfield Construction,* which relate to the issue of whether or not the government has waived its sovereign immunity, were addressed in those cases, nor were they relevant there. Consequently,

**362**

the cases cited by the Allens are clearly distinguishable from, and irrelevant to, the issue before this court.

Because the court has found both that the government's position in the underlying litigation was substantially justified and that the Allens are not entitled to receive attorney's fees incurred before the effective date of the Equal Access to Justice Act in any event, it is not necessary for the court to consider the alternative arguments raised by the government in this case. In particular, the court need not consider whether the Allens' amended petition for fees, which increased substantially the amount that they originally requested, was timely filed under the Act.

For all the reasons stated above, plaintiffs Allens' application for attorney's fees and amended application for attorney's fees are both denied.