**J.A. JONES CONSTRUCTION COMPANY and Jones/Batson-Cook/Russell, a joint venture, Petitioners,**

v.

**SOUTHERN STRESS WIRE CORPORATION; United States of America; Trustees of the Atlanta Ironworkers Local 387 Pension Funds; Trustees of the Southeastern Ironworkers Welfare Fund and Trustees of the Atlanta Ironworkers, Joint Apprentice Committees and Local 387 International Association of Bridge, Structural and Ornamental Ironworkers; State of Georgia; Stokes and Shapiro, a partnership; David T. Emerson; and Chatham Machinery Company, Claimants.**

Civ. No. C80–1526A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 1982.

David M. Ivey, Floyd E. Siefferman, Jr., David A. Runnion, Mark R. Swanson, Atlanta, Ga., for petitioners.

William L. Harper, U.S. Atty., Jere W. Morehead, Asst. U.S. Atty., James T. Langford, Kenneth L. Drucker, Atlanta, Ga., for claimants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This interpleader action is currently before the court on the motion of the plaintiffs for an award of attorney's fees and costs, the motion of defendant United States of America for summary judgment, Rule 56, Fed.R.Civ.P., and the motion of defendant State of Georgia for summary judgment, Rule 56, Fed.R.Civ.P.

Plaintiffs are disinterested stakeholders and were discharged from this action by order dated December 23, 1981. In that order, the court deferred consideration of the plaintiffs' request for attorney's fees and costs until the priority of the federal government's tax lien could be determined. Plaintiffs now renew their request and ask the court to reconsider making an award of attorney's fees and costs to the plaintiffs' counsel. Upon reconsideration, the court finds that the plaintiffs' counsel are entitled to an award.

 Under the "American Rule," prevailing litigants are not ordinarily entitled to collect attorney's fees from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). This rule, however, has traditionally been subject to numerous statutory[1] and common law exceptions. For example, the judicially created bad faith exception allows an award of attorney's fees where the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, while the judicially created common fund exception allows an award of attorney's fees where a party creates a common fund of money or other assets for the benefit of others as well as himself.

 In 1980, Congress enacted the Equal Access to Justice Act (hereinafter "EAJA"), 28 U.S.C. § 2412, to authorize attorney's fees against the United States under certain circumstances. First, a court may assess fees and expenses against the government to the same extent that a private party would be liable for the same pursuant to common law or statute. 28 U.S.C. § 2412(b). Second,

[A] court shall award to a prevailing party other than the United States fees

---

1. These statutory exceptions include Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b), 2000e–5(k), Title III of the Organized Crime Control Act, 18 U.S.C. § 2520; the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E); the Voting Rights Act of 1975, 42 U.S.C. § 1971(e); the Consumer Product Safety Act, 15 U.S.C. §§ 2059(e)(4), 2060, 2072(a), 2073; and the Civil Rights Attorney Fees Awards Act of 1976, 42 U.S.C. § 1988.

and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). "[F]ees and other expenses" include reasonable attorney's fees. 28 U.S.C. § 2412(d)(2)(A).

The legislative history of the EAJA evinces an intent to permit a court in its discretion to award attorney's fees and other expenses for prevailing parties in civil litigation involving the United States

> to the same extent it may award fees in cases involving other parties. Thus, the United States would be liable for fees under the "bad faith," "common fund," and "common benefit" exceptions to the American Rule. There appears to be no justification for exempting the United States in these situations; the change [brought about by the EAJA] simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties.

H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News, at 4984, 4990. The federal government concedes that the EAJA explicitly waived sovereign immunity for recovery of attorney's fees under certain circumstances but asserts that the plaintiffs are entitled, under the EAJA, to recovery only of fees earned after October 1, 1981, the effective date of the Act.

The question whether fees incurred antecedent to the effective date of the EAJA may be recovered has not been addressed by the Eleventh Circuit Court of Appeals.[2] Two district court decisions, however,

guide the court in resolving this question. In *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348 (D.D.C.1982), Judge Penn held that the EAJA permitted recovery of attorney's fees for legal work performed prior to the effective date of the Act so long as the action was pending on or commenced on or after October 1, 1981. Judge Penn premised this holding on the language of the statute. He noted, first, that the EAJA took effect on October 1, 1981, and applies to "any civil action ... which is pending on, or commenced on or after, such date," EAJA, P.L. 96–481, Title II, § 208, 94 Stat. 2330 (1980) (*see* 28 U.S.C.A. note at 54 (Supp.1982)). Because nothing in the legislative history of the EAJA suggested that it should be interpreted to apply only to that part of a case pending on October 1, 1981, that occurs on or after that date, he adhered to the rule that the statute should be given its plain, clear, and common meaning. Furthermore, he observed that construing the EAJA to bifurcate cases on October 1, 1981, "would eschew the purpose of the Act to provide financial assistance to those litigants who would not ordinarily be able to contest unreasonable government action, as it would diminish their recovery and thereby remove the incentive to sue." *Photo Data, Inc. v. Sawyer*, 533 F.Supp. at 351 (footnote omitted). Finally, he concluded that this interpretation of the EAJA was consistent with the construction given similar attorney's fees statutes. *Id.* n. 5 and cases cited therein.

Reaching the opposite conclusion, Judge Decker in *Ethan Allen v. United States*, 547 F.Supp. 357 (N.D.Ill.1982), ruled that attorney's fees incurred before the effective date of the EAJA should not be reimbursed. He reasoned, relying on *Brookfield Construction Co. v. United States*, 661 F.2d 159, 228 Ct.Cl. 551 (1981),[3] that

---

**2.** In *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission*, 672 F.2d 426, 428 n. 4 (11th Cir.1982), the Eleventh Circuit explicitly declined to address this question.

**3.** In *Brookfield*, the court held that a contractor who elected to proceed under the Contract Disputes Act of 1978 (hereinafter "Act"), 41 U.S.C.

§ 601 *et seq.*, could recover simple variable-code interest on its claims only for the period after the effective date of the Act. Section 12 of the Act provides for the payment of interest on amounts found due contractors "from the date the contracting officer receives the claim pursuant to § 6(a) from the contractor until payment thereof." 661 F.2d at 162 n. 4. Examining the

allowing recovery of fees incurred before October 1, 1981, would not promote the intent of the EAJA to reduce the deterrents and disparity of defending against unreasonable governmental action and would place a large and unexpected liability upon the federal government.[4]

■ Given the split in authority, this court adopts the rule announced in *Photo Data, Inc.* The language of the EAJA is clear; the Act explicitly applies to *actions* pending on October 1, 1981. There is no indication in the language of the Act that Congress intended to limit attorney's fees to those incurred after October 1, 1981. Had Congress so chosen, it would have expressly stated this limitation. For example, in 1966, when Congress amended 28 U.S.C. § 2412, the predecessor of the EAJA, Congress expressly provided that "these amendments ... apply only to judgments entered in actions filed subsequent to the date of enactment of this Act...." 28 U.S.C. § 2412, Pub.L. 89–507, § 3, *quoted in* 28 U.S.C.A. at 448. A similar limitation is not found in the EAJA.

■ Moreover, the court finds Judge Decker's reasoning in *Allen* to be unsound. Although Judge Decker premised his decision on the rationale of *Brookfield*, he failed to note the significant distinction between the two cases. In *Brookfield*, the Court of Claims found the relevant language of the Contract Disputes Act of 1978 to be ambiguous and the legislative history to be completely silent as to the question whether a contractor could recover interest on its subsequently allowed claims for periods of time prior to the effective date of that Act. In these circumstances, with no affirmative guidance from Congress, the Court of Claims ruled that retroactive interest was not recoverable considering the large liability that would be imposed on the government, the objectives of that Act, and the traditional attitude cautioning against imposing nonconstitutional interest on the government. Whereas, here, as in *Ethan Allen*, the statutory language at issue is plain.[5] In light of the well-established rule that absent an indication to the contrary in the legislative history the wording of a

scope of this section, the *Brookfield* court noted initially that another court had found that interest could not go back prior to the effective date because section 6(a) did not exist before then and thus claims could not be received pursuant to section 6(a). The *Brookfield* court, however, did not find this point controlling; rather, it observed that section 12 had a "definite aura of ambiguity" and was not plain on its face. *Id.* at 163. The court therefore turned for guidance to the legislative history of the Act, which it found to be wholly silent on the issue. Because Congress had given no affirmative guidance, the court articulated three factors to guide its decision: (1) the very large liability that would be imposed on the government for pre-Act statutory interest; (2) the objectives and purposes of the Act's interest provision; and (3) the traditional attitude cautioning against imposing nonconstitutional interest on the government if the mandate is not clear. Applying these principles, the court ruled that pre-Act interest on subsequently allowed claims was not recoverable.

4. In particular, Judge Decker referred to the cost estimate of the EAJA prepared by the Congressional Budget Office (hereinafter "CBO") which showed "the outlays starting low in the fiscal year 1981 and increasing sharply in each of the following years." *Ethan Allen v. United States*, 547 F.Supp. 357 at 361. In Judge Deck-

er's view, this indicated that the CBO estimate did not show an immediately large and steady outlay of funds throughout the life of the EAJA, as would be expected if Congress intended fees incurred prior to October 1, 1981, to be recoverable. To the extent that congressional intent can be inferred from a CBO cost estimate, this court draws a different inference. The CBO estimated that in fiscal years 1982, 1983, and 1984, the costs of award payments would be $92,000,000, $109,000,000, and $129,000,000, respectively. 1980 U.S.Code Cong. & Ad.News at 5000. It offered no estimate for fiscal year 1981, which commenced on October 1, 1980 and extended until September 30, 1981. This can be explained by the fact that prior to October 1, 1981, attorney's fees against the government were not recoverable under any circumstances. When the EAJA became effective on October 1, 1981, it applied to all civil actions pending or commenced on or after that date. Costs, including attorney's fees, however, could not be sought until then and therefore would be reflected only in the fiscal 1982 budget which commenced on October 1, 1981.

5. Judge Decker did not even address this question or the corollary question whether the language of the EAJA was sufficiently ambiguous to require an examination of its legislative history or an application of the *Brookfield* factors.

statute should be given its plain, clear meaning, the court believes that Judge Decker's reliance on the *Brookfield* rationale is misplaced.

 Thus, the court finds that the plaintiffs are entitled under the EAJA to an award of fees and costs incurred in bringing this interpleader action. Subsection (b) of the EAJA provides that a court may assess fees and costs against the government to the same extent that a private party would be liable for the same pursuant to common law or statute. 28 U.S.C. § 2412(b). *See Alspach v. District Director*, 527 F.Supp. 225 (D.Md.1981). Under the common law and governing statutes, "the prevailing principle in interpleader actions brought in federal court ... is that it is within the discretion of the court to award the disinterested stakeholder costs including reasonable attorneys' fees out of the deposited fund." 3A *Moore's Federal Practice* ¶ 22.16[2], at 22–166. *See Aetna Life Insurance Co. v. Harley*, 365 F.Supp. 1210, 1215 (N.D.Ga.1973). It is generally thought appropriate to do so because the stakeholder's "retention of counsel has in all likelihood been necessitated not because of the stakeholder's wrongdoing but rather because he is the mutual target in a dispute which is not of his own making." 3A *Moore's Federal Practice* ¶ 22.16[2], at 22–170. Georgia courts follow the same rule of equity. GA.CODE ANN. § 37–1503.

 In awarding statutorily authorized attorney's fees in the Eleventh Circuit, a district court must follow the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Accordingly, in awarding fees under the EAJA, the court will follow the *Johnson* guidelines. In *Johnson*, the court listed the following twelve factors as bearing on the question of reasonable attorney's fees: (1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 717–19. The court will address below those factors relevant to this action.[6]

Plaintiffs seek an award of $3,040.00 in attorney's fees for 45.2 hours of time expended by two attorneys, Steven Harbour and Anneke Woodward, and an award of $817.38 in costs. Plaintiffs have submitted an itemized statement of the services and amount of time rendered by Mr. Harbour and Ms. Woodward and a general statement of costs incurred. *See* Affidavit of S.E. Harbour, dated October 16, 1981; Affidavit of M.H. Pope, dated October 16, 1981. Plaintiffs do not seek reimbursement for any fees incurred in connection with the preparation of their motion for summary judgment or their request for attorney's fees. Defendant United States objects to the fees requested on the grounds that the amount claimed is excessive and the time listed includes duplicative effort on the part of Mr. Harbour and Ms. Woodward.

The court has considered the plaintiffs' attorneys' affidavits carefully in light of the defendant's objections and does not find the hours claimed to be unreasonable.[7]

---

**6.** Plaintiffs' counsel do not assert that their acceptance of this case in any way precluded them from accepting other gainful employment. They also do not contend that time limitations imposed by the client, or the nature or length of the professional relationship with the client were factors in this case, or that the case was particularly undesirable.

**7.** Other courts have awarded fees and costs in interpleader actions where such amounts were justifiably incurred. *See, e.g., Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467, 476 (9th Cir.1953) (fees of $10,000); *Savannah Bank & Trust Co. v. Block,* 175 F.Supp. 798 (D.C.Ga.1959) (fees of $2,000 and expenses of $157.30 taxed against fund of $10,000).

Although when "more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized," *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717, the mere fact that more than one attorney worked on the same matter is not necessarily unreasonable. In an interpleader action involving eight claimants, some of whom have asserted more than one claim, joint effort by two attorneys is not out of the ordinary. Plaintiffs' attorneys conducted legal research as to the entitlement of the various claimants to the interpleaded fund and the priorities of these claimants. In addition, they drafted the complaint and gathered information in order to prepare the Fifteen Day Case Statement required by this court. Plaintiffs' attorneys have acted in good faith throughout the course of this action, and the court is persuaded that the estimates of time are reasonably accurate. The court will allow all the hours claimed.[8]

Defendant United States does not object to the hourly rate claimed by the plaintiffs. Plaintiffs request $70 per hour for work performed by Mr. Harbour until September 1980 and $75 per hour thereafter, and $60 per hour for work performed by Ms. Woodward until September 1980 and $65 per hour thereafter. Plaintiffs' counsel undertook representation of their client on an hourly fee basis. Although the customary fee in this community for legal work covers a broad range from approximately $30 per hour to over $100 per hour, *see Freeman v. Motor Convoy, Inc.*, No. 16185 (N.D.Ga. June 30, 1981), counsel here request a reasonable and representative fee.

This interpleader action involved difficult legal issues. Plaintiffs were faced with the claims of eight adverse claimants and were unable, despite a good-faith effort, to determine to what extent the amounts claimed belonged to any particular claimant or to reach a settlement with all the claimants.

Finally, the court notes that the plaintiffs' attorneys are experienced and reputable. Mr. Harbour is an associate in the law firm of Long, Aldridge, Heiner & Stevens in Atlanta, Georgia. He has been a member of the bar since 1976. He graduated from Columbia University School of Law in 1976 and has specialized in civil litigation. Ms. Woodward is also an associate at the Long, Aldridge firm in Atlanta. She has been a member of the bar since 1974. She graduated from Columbia University School of Law in 1972 and has specialized in civil litigation.

In light of the foregoing, the court will award the plaintiffs' attorneys $3,040.00 in attorney's fees.

In addition to requesting attorney's fees, the plaintiffs' attorneys also seek reimbursement for $817.38 in costs that they incurred pursuing this interpleader action. These costs include $239.00 in filing and service fees, and $578.38 in copying, long-distance telephone charges, and miscellaneous expenses. Affidavit of M.H. Pope, dated October 16, 1981, at ¶ 6; Affidavit of S.E. Harbour, dated October 16, 1981, at ¶ 26. Although filing and services fees are generally recoverable, *see* 28 U.S.C. § 1920, the court is unable to meaningfully review the plaintiffs' request for these fees or for copying, telephone charges and miscellaneous costs. Plaintiffs have not provided the court with an itemization of these fees and costs. Therefore, the court will direct the plaintiffs' attorneys, if they wish to seek reimbursement for these amounts, to submit an itemization of said amounts. Consideration of the motion of defendant United States for summary judgment and the motion of defendant State of Georgia will be deferred.

Accordingly, the plaintiffs' request for attorney's fees in the amount of $3,040.00 is GRANTED. Plaintiffs' attorneys' request for costs in the amount of $817.38 is DEFERRED. Plaintiffs' attorneys are DIRECTED to file within ten (10) days of

---

**8.** In the absence of a request by the government for an oral hearing on the issue of the reasonableness of the fees sought by the plaintiffs' counsel, the court will resolve this issue on the basis of the parties' written briefs.

receipt of this order an itemization of the costs for which they wish to be reimbursed. Defendants are PERMITTED ten (10) days from the filing of the plaintiffs' attorneys' itemization to respond. Consideration of the motion of defendant United States for summary judgment and the motion of defendant State of Georgia is DEFERRED until such time.

IT IS SO ORDERED.