ROBERT RANDALL BAKER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7599–83.     Filed November 28, 1984.

*David E. Rodney*, for the petitioner.
*Steven M. Walk*, for the respondent.

---

[9]Since the Venus project generated no income in the years in question, sec. 183(b)(2) is not applicable.

OPINION

DAWSON, *Chief Judge*: This case is before the Court on petitioner's motion for litigation costs filed on April 26, 1984,[1] pursuant to Rule 231[2] and section 7430.[3] The issues for decision are (1) whether respondent's position in the civil proceeding was unreasonable, and, if so, (2) whether petitioner has exhausted the administrative remedies available to him within the Internal Revenue Service. If both issues are resolved in favor of petitioner, the Court must also decide whether petitioner's litigation costs were reasonable.

## Background

In August 1982, respondent notified petitioner that his 1979 and 1980 returns had been selected for examination and that he should meet with respondent's tax auditor in Riyadh, Saudi Arabia, on September 19, 1982. At the meeting with the tax auditor, petitioner received a copy of a report that computed proposed tax deficiencies and additions to tax for 1979 and 1980 and a copy of respondent's Publication No. 5, which contains an explanation of the administrative appeals process. The proposed deficiencies resulted, in part, from a disallowance of the foreign earned income exclusion claimed by petitioner under section 911.

Petitioner mailed a letter dated October 15, 1982, to the tax auditor in Jidda, Saudi Arabia, protesting the decision to disallow the section 911 exclusion and stating that petitioner "wish[ed] to make a written appeal." The letter was apparently not received by the tax auditor because on October 26, 1982, the auditor closed the administrative case file as an "unagreed" case and, pursuant to standardized procedures, returned the case file to the Foreign Operations District in Washington, D.C., for issuance of a notice of deficiency.

[1] Petitioner then filed a supporting memorandum on May 15, 1984. Pursuant to the Court's order dated May 11, 1984, and with leave to file granted, respondent filed a response to petitioner's motion on June 27, 1984.

[2] All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

In a notice of deficiency dated December 10, 1982, respondent determined the following deficiencies and additions to tax:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) |
|------|------------|----------------------------------|
| 1979 | $655 | $82.72 |
| 1980 | 2,534 | 506.80 |

For both taxable years, the adjustments that gave rise to the deficiencies were as follows: (1) A full disallowance of the foreign earned income exclusion; (2) an increase in a rental loss; (3) an allowance of a deduction for excess foreign living costs under section 913; and (4) additional income in the form of fair rental value of housing provided to petitioner by his employer.

In January 1983, petitioner mailed a letter to respondent reaffirming his desire to protest the deficiency determination. Respondent treated this letter as a submission of new information and as a request for an explanation of the determination of deficiencies and additions to tax for 1979 and 1980. Accordingly, respondent mailed to petitioner in February 1983 a written explanation of the adjustments that gave rise to the deficiencies and a copy of the section 911 temporary regulations in force at that time.

The petition in this case was filed on April 6, 1983. At the time the petition was filed, petitioner resided in Riyadh, Saudi Arabia. Petitioner requested that trial of the case be held in Cleveland, OH. His request was granted. Respondent filed an answer on May 16, 1983, and trial responsibility for the case was then transferred from the Washington to the Cleveland District Counsel's Office.

On June 3, 1983, the Cleveland Appeals Office was given jurisdiction over the case to explore all settlement alternatives. The appeals officer mailed to petitioner a letter dated June 15, 1983, explaining the issues in the case and requesting that petitioner submit information in support of his position for the purpose of exploring the possibility of settlement. Petitioner met with the appeals officer in Cleveland in September 1983. No settlement having been reached, on November 14, 1983, the case was closed by the Appeals Office

and returned to the Cleveland District Counsel's Office for trial preparation.

In December 1983, petitioner retained counsel to represent him in this case. On December 12, 1983, the Court notified the parties that the case was set for trial in Cleveland at the trial session beginning March 5, 1984. Petitioner's counsel entered his appearance in this case on January 5, 1984. On January 12, 1984, petitioner filed a motion for continuance and a motion for leave to supplement the petition.

On January 12, 1984, counsel for both parties met to discuss a stipulation of facts. The parties reviewed the documents that had been previously submitted by petitioner. Not being satisfied with that information, counsel for respondent requested that petitioner supply additional information to support petitioner's entitlement to the foreign earned income exclusion. Petitioner provided certain information to respondent on February 14, 1984. Deeming the information to be inadequate, respondent renewed his request for information by letter dated February 15, 1984.

On February 21, 1984, petitioner filed certain items, including a motion for leave to further amend the petition and a motion for summary judgment. All of petitioner's motions were disposed of by the Court on March 15, 1984.

On February 23, 1984, counsel for both parties met again. During this conference the parties discussed respondent's request for information and petitioner's claim for litigation costs. Counsel for respondent indicated to petitioner's counsel that respondent might concede the foreign earned income exclusion issue if the information that had been previously requested were submitted.

On March 23, 1984, petitioner submitted more information. Respondent agreed to concede the foreign earned income exclusion and by letter dated April 17, 1984, respondent transmitted to counsel for petitioner an executed stipulation as to settled issues pursuant to Rule 231(c). This stipulation was filed by both parties on April 26, 1984. One adjustment to petitioner's returns remained. This adjustment increased petitioner's rental loss, resulting in an over-assessment and refund to petitioner.

Petitioner is requesting an award of $4,236.40 for litigation costs incurred as of April 23, 1984.

## *Discussion*

Petitioner contends, in part, that respondent was unreasonable in determining the deficiencies and additions to tax and "in promulgating" section 1.911–1(c)(1)(iv), Income Tax Regs. Respondent contends that his conduct prior to the filing of the petition should not be considered by the Court. Assuming that the Court does inquire into the pre-petition actions of respondent, respondent further contends that his actions were reasonable.

Section 7430 provides, in part, as follows:

SEC. 7430(a). IN GENERAL.—In the case of any civil proceeding which is—
(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
(2) brought in a court of the United States (including the Tax Court),
the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.
(b) LIMITATIONS.—

     *     *     *     *     *     *     *

(2) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

     *     *     *     *     *     *     *

(c) DEFINITIONS.—For purposes of this section—

     *     *     *     *     *     *     *

(2) PREVAILING PARTY.—
(A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—
(i) establishes that the *position* of the United States *in the civil proceeding* was unreasonable, and
(ii)(I) has substantially prevailed with respect to the amount in controversy, * * *

     *     *     *     *     *     *     *

(3) CIVIL ACTIONS.—The term "civil proceeding" includes a civil action. [Emphasis added.]

In order for petitioner to be a "prevailing party," as defined in section 7430(c)(2), he must establish that respondent's "position * * * *in the civil proceeding*" was unreasonable. We think that the clear meaning of this specific language and of the statute as a whole requires us to examine the reasonableness of respondent's position during the litigation. Congress clearly distinguished a civil proceeding from an administrative proceeding by including the requirement of exhaustion of administrative remedies in section 7430(b)(2) before an award may be made of costs incurred in the *subsequent* civil proceeding. Support for our interpretation of section 7430(c)(2) is found in the legislative history of that section. H. Rept. 97–404, at 14 (1981), states as follows:

Recoverable litigation costs include only the reasonable amount of costs which are incurred in the litigation of a civil tax action or proceeding. * * * The committee intends that the *costs of preparing and filing the petition* or complaint *which commences a civil tax action be the first of any recoverable attorney's fees.* Fees paid or incurred for the services of an attorney during the administrative stages of the case could not be recovered under an award of litigation costs. [Emphasis added.]

In addition, our interpretation is consistent with that of the majority of District Courts that have decided this issue. Cf. *Brazil v. United States,* an unreported case (D. Oreg. 1984, 54 AFTR 2d 84–5707, 84–2 USTC par. 9596); *Eidson v. United States,* an unreported case (N.D. Ala. 1984, 53 AFTR 2d 84–841, 84–1 USTC par. 9182); *Zielinski v. United States,* an unreported case (D. Minn. 1984, 54 AFTR 2d 84–5132, 84–1 USTC par. 9514). But see *Hallam v. Murphy,* an unreported case (N.D. Ga. 1983, 53 AFTR 2d 84–1022, 84–1 USTC par. 9230).

In this Court, litigation commences by the filing of a petition. Rule 20(a). We must, therefore, test the reasonableness of respondent's position during the litigation from the time of the filing of the petition in this case on April 6, 1983. We, therefore, disregard petitioner's arguments that respondent was unreasonable in determining the deficiency and "in promulgating" section 1.911–1(c)(1)(iv), Income Tax Regs., because, in this case, they offer no guidance for deciding the issue of whether respondent's position was unreasonable. Moreover, a motion for litigation costs is not the appropriate

vehicle for determining the validity or invalidity of a regulation.

In determining reasonableness, we look for guidance to certain cases decided under the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d)(1)(A) (1982) (EAJA), which provides, in part, that the court shall award attorney's fees and costs—

to a prevailing party other than the United States * * * in any civil action * * * brought by or against the United States * * * unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust. [Emphasis added.]

The test for substantial justification has been held by some courts to be reasonableness, which is the same test as that under section 7430. *Ashburn v. United States*, 740 F.2d 843, 850 (11th Cir. 1984); *Foster v. Tourtellotte*, 704 F.2d 1109, 1112 (9th Cir. 1983); *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.*, 672 F.2d 426, 430 (5th Cir. 1982); *United States for Heydt v. Citizens State Bank*, 668 F.2d 444, 447 (8th Cir. 1982). "Where the Government can show that its cause had a reasonable basis both in law and in fact, no award will be made." *Foster v. Tourtellotte*, 704 F.2d at 1112 (quoting H. Rept. 96–1418, at 11 (1980)).[4] Other courts have indicated that there is a difference between the tests of "substantially justified" and "reasonableness." See *Spencer v. NLRB*, 712 F.2d 539, 558 (D.C. Cir. 1983); *American Academy of Pediatrics v. Heckler*, 580 F. Supp. 436 (D. D.C. 1984); *Hornal v. Schweiker*, 551 F. Supp. 612, 617 (M.D. Tenn. 1982).

In any event, the determination of reasonableness should be made based upon all the facts and circumstances surrounding the proceeding and the fact that the Government eventually loses the case should not be determinative. *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed. Cir. 1982); see *Watkins v. Harris*, 566 F. Supp. 493, 498 (E.D. Pa. 1983). Concession of a case does not mean that the conceding party's position in the civil proceeding was unreasonable. To so hold would completely vitiate the reasonableness standard from section 7430(c)(2)(A), and the outcome of the case would

---

[4]Unlike the EAJA, sec. 7430(c)(2)(A) places the burden of establishing the unreasonableness of respondent's position on petitioner. We do not, however, decide this issue or grounds of burden of proof. Since no hearing was held in this case, we have viewed the facts in a manner most favorable to petitioner.

determine the issue of reasonableness. See *Broad Ave. Laundry & Tailoring v. United States, supra* at 1391–1392.

Our determination as to whether respondent acted reasonably in this case will involve a review of the legal basis for his position and of certain actions taken during litigation. First, we think that respondent's legal position was reasonable. The provisions of section 911 as applicable to petitioner had recently been enacted. Section 911 was amended by the Tax Treatment Extension Act of 1977, Pub. L. 95–615, sec. 202, 92 Stat. 3097, 3098, effective for taxable years ending after 1978. As applicable to 1979 and 1980,[5] the taxable years before us, section 911 allowed a foreign earned income exclusion for individuals who resided in a camp, as defined in section 911(c)(1)(B),[6] within a hardship area. In the instant case, the controversy between the parties primarily concerned whether petitioner resided in a camp as defined in section 911(c)(1)(B), as interpreted by section 1.911–1(c), Income Tax Regs. Respondent's position throughout the litigation was consistent with this regulation. In addition, the substantive issue under section 911 was one of first impression in the courts. Therefore, respondent's position was not contrary to any published decision. Consequently, we can find no basis for holding that respondent's legal position was unreasonable.

The term "position of the United States in the civil proceeding" is rather broad, and it encompasses more than legal position. With regard to making our determination of the reasonableness of respondent's position, Congress stated as follows:

The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken

---

[5] Sec. 911 was soon afterward amended to eliminate the provisions in dispute in this case by the Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 11, 95 Stat. 172, 190, effective with respect to taxable years beginning after Dec. 31, 1981.

[6] (B) CAMP.—For purposes of this section, an individual shall not be considered to reside in a camp because of his employment unless the camp constitutes substandard lodging which is—
   (i) provided by or on behalf of the employer for the convenience of the employer because the place at which such individual renders services is in a remote area where satisfactory housing is not available on the open market,
   (ii) located, as near as practicable, in the vicinity of the place at which such individual renders services, and
   (iii) furnished in a common area (or enclave) which is not available to the public and which normally accommodates 10 or more employees.

into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97–404, *supra* at 12.]

In this regard, petitioner contends that respondent's Washington Appeals Office conceded the same issue involved on returns of other taxpayers similarly situated to petitioner and that, therefore, respondent did not provide petitioner with the same criteria of review that were provided by other Appeals Offices to other taxpayers.[7] We disagree. We do not think that respondent's actions in regard to other taxpayers indicate that his position was unreasonable in this case. Respondent's Appeals Office in Cleveland had jurisdiction over this case from June to November 1983. Respondent's District Counsel's Office in Cleveland conceded the case no later than April 1984. Once the petition was filed in this case, respondent proceeded in a timely fashion and gathered sufficient information to concede this case. Accordingly, we reject petitioner's contention that it is unreasonable under the instant circumstances for respondent to concede a case in one office and not in another.

Petitioner also asserts that respondent was unreasonable in refusing to concede the case until he was satisfied by proof of facts. We think the fact that respondent required petitioner to provide some corroboration of the various factual statements made by counsel for petitioner is not unreasonable. See *Greenberg v. United States*, 1 Cl. Ct. 406, 408 (1983); *Allen v. United States*, 547 F. Supp. 357, 360 (N.D. Ill. 1982) (cases decided under the EAJA). Also, as previously noted, this litigation proceeded in a normal and orderly fashion, refuting petitioner's implication that the additional information was requested from petitioner for purposes of delay.

---

[7]On Aug. 27, 1984, the Court received from petitioner a document that was filed as a motion for a hearing. We have not directed a hearing under Rule 232(a)(3). Although there are present some bona fide factual disputes, for purposes of disposition of petitioner's motion for litigation costs, we have resolved them in favor of petitioner. For example, we assume as a fact that the Washington Appeals Office conceded the same issue present on returns of other taxpayers. We, therefore, find that a hearing is not necessary and petitioner's motion for a hearing will be denied.

Based on the foregoing, we think that respondent's position in the civil proceeding was not unreasonable. Consequently, petitioner is not a "prevailing party" as defined in section 7430(c)(2) and is not entitled to an award for reasonable litigation costs. His motion, therefore, will be denied. Due to our disposition of this issue, we find it unnecessary to address the remaining issues in this case.

*An appropriate order and decision will be entered.*

Reviewed by the Court.

FAY, SIMPSON, STERRETT, GOFFE, WILBUR, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, and WRIGHT, *JJ.*, agree with this opinion.