ROBIN SIMPSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Simpson v. Commissioner
Docket No. 13014-93
United States Tax Court
T.C. Memo 1995-194; 1995 Tax Ct. Memo LEXIS 196; 69 T.C.M. (CCH) 2513; May 2, 1995, Filed *196 For petitioner: W. Patrick Cantrell. For respondent: Carol Bingham McClure. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case is before the Court on petitioner's motion for litigation costs pursuant to section 7430 and Rule 231. [1] On September 7, 1994, we vacated our decision entered on August 5, 1994, for the purpose of addressing petitioner's motion, and yfiled the motion on that date. The facts underlying this action may be summarized as follows. In May of 1992, revenue agent Gladys Krueger (Krueger) began examining petitioner's 1989 Federal income tax return and the 1989 corporate income tax return of petitioner's wholly owned corporation, Helicopters International, Inc. (HII). In the course of her examination, Krueger inspected petitioner's bank records at the office of petitioner's counsel, W. Patrick *197 Cantrell (Cantrell). The records indicated that petitioner had bank deposits in excess of the amount he reported as income for that year. Krueger also discovered during her examination of HII's records that the corporation had made certain expenditures on behalf of petitioner. Some of the corporate minutes Krueger examined referred to loans to petitioner, indicating that the notes were prepared after funds were disbursed and that no payments were required from petitioner for some years. Krueger was not permitted access to corporate minutes of later years to determine whether repayment of the purported debt had begun, but she was informed that repayment began sometime following commencement of the audit. By letter dated October 23, 1992, Krueger wrote to Cantrell concerning the apparent discrepancy between petitioner's bank deposits and the amount of income reported on his return stating, in part: An analysis of [petitioner's] Robin Simpson's personal checking account reveals deposits in excess of the amounts reported on the 8912 1040 tax return. Please prepare a reconciliation income vs nonincome of deposits and substantiate those nonincome deposits in excess of $ 250.00.
*198 Cantrell replied by letter dated October 26, 1992, stating that If you will furnish us copies of the deposit slips for the periods of time you are auditing, we will be happy to analyze them and explain the nature of each deposit. In the meantime, we cannot explain numbers which we did not give you and of which we have no knowledge.
Krueger responded by letter dated October 30, 1992, stating that The dollar amounts of deposits listed on the summary report provided to you for explaination [sic], were taken from bank statements in your office on my last visit. Since you have refused at this time to reproduce these documents I have no copies to provide you.
On January 4, 1993, Krueger transmitted a copy of her October 23, 1992, letter by facsimile to Cantrell, but she received no reply. At a meeting held on March 10, 1993, Cantrell provided Krueger and her supervisor James Ellis with a spreadsheet illustrating the nature of the excess bank deposits. Cantrell did not present documentation showing that the spreadsheet entries represented nontaxable receipts. Two weeks later on March 24, 1993, respondent issued petitioner a notice of deficiency. Respondent determined *199 that petitioner had $ 31,140 of unreported income related to the excess deposits. Respondent also determined that petitioner had received $ 69,510 of unreported dividends from HII, consisting of $ 4,705 for the personal use of the corporation's automobile and $ 64,805 because of the corporation's payment of petitioner's personal expenses. These determinations resulted in an increase of tax in the amount of $ 31,159. Respondent also determined that petitioner was liable for an addition to tax pursuant to section 6654 and a penalty pursuant to section 6662(a). Petitioner filed the petition on June 22, 1993, alleging that deposits of nontaxable funds had been deposited in his bank account and that expenses paid by HII were not constructive dividends to petitioner. In the answer, filed July 28, 1993, respondent maintained the position taken in the notice of deficiency, except that the addition to tax pursuant to section 6654 was conceded. At a November 9, 1993, settlement conference with appeals officer John C. Matejka (Matejka), Cantrell presented the spreadsheet indicating the nature of the deposits to petitioner's bank account during 1989, along with receipts and bills, from *200 which Matejka determined that all but $ 3,300 of the deposits had nontaxable sources. Cantrell conceded that petitioner received $ 298.83 of constructive dividends, and he presented documentation that $ 3,295.36 of purported constructive dividends were not taxable to petitioner, which Matejka conceded. Several "constructive dividend" items were not resolved at the conference. HII had paid $ 13,976 and $ 42,270 to petitioner, which Cantrell argued were loans. Also, there was a payment of $ 2,500 to a friend of petitioner, Jay Stourner, and a payment of $ 2,074 to petitioner's dentist, Dr. Van Zant. On December 6, 1993, Cantrell provided Matejka with documentation that Jay Stourner's widow had repaid the $ 2,500 loan and that the medical payment was made pursuant to HII's medical reimbursement plan. Cantrell presented notes indicating that petitioner had borrowed $ 25,000 and $ 42,367.18 from HII. Further, Cantrell provided records from HII showing bookkeeping entries related to interest accruals and reductions to principal. Cantrell suggested that the case be settled on the basis of the documentation supplied, with respondent conceding the penalty under section 6662(a). By *201 letter transmitted to Cantrell by facsimile on June 29, 1994, Matejka indicated that the taxable year could be settled on the terms proposed by Cantrell. However, Matejka expressed concern about the $ 67,367.18 "debt" reflected in the notes to HII, in stating that You offered as evidence that those amounts actually were loans, not dividends, copies of executed notes and workpapers reflecting payments during 1991 and 1992. The notes alone, without a reasonable record of payment of interest and principal, are weak evidence of bona fide debts. (That's especially true as the workpapers suggest that the large $ 42,367.18 three year unsecured note was merely renewed at maturity.) The problems with the payments workpaper you present is that the payments were by bookkeeping entries in the corporate books and Mr. Simpson's 91 & 92 1040s didn't recognize them. While no cash changed hands, there was FUNDING of interest payments and principal reductions. Those were changes of financial circumstances which should have been recognized by * * * [petitioner], even though he is a cash basis taxpayer. The entries in HII's books caused * * * [petitioner] to realize $ 12,000 more income *202 in 1991 and $ 12,000 in 1992. If * * * [petitioner] will sign a closing agreement agreeing to those 1991 and 1992 income adjustments, I'll submit my report seeking that the 8912 case be resolved exactly as you proposed.
By facsimile dated July 1, 1994, Matejka transmitted a Statement of Income Tax Changes resulting from the terms of the settlement, conditioned on petitioner's acceptance of the adjustments to income for 1991 and 1992. Matejka subsequently sent decision documents to Cantrell for signature. On July 18, 1994, Matejka again wrote to Cantrell urging him to execute and return the decision documents. Cantrell signed and returned the decision documents that day. On August 5, 1994, this Court entered the stipulated decision that there was a deficiency of $ 1,008 due from petitioner for 1989, and that no addition to tax and penalty were due. Petitioner subsequently filed the motion for litigation costs, asking $ 3,440 for Cantrell's fees (at $ 160 per hour), $ 760 for an attorney Cantrell brought in for litigation assistance (at $ 200 per hour), $ 1,320 for paralegal costs, and $ 60 for the Court's filing fee. Discussion Generally, the doctrine of sovereign immunity *203 shelters the United States government from suits brought against it by private parties; "in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." United States v. Chemical Found., Inc., 272 U.S. 1, 20 (1926). Section 7430 constitutes a specific waiver by Congress of the sovereign's immunity against suit by a private party for litigation costs, and it is the exclusive provision for awards of litigation costs in Federal tax cases. Bayer v. Commissioner, T.C. Memo. 1991-282. Waivers of immunity are strictly construed in favor of the Government, and they are not enlarged beyond what a fair reading of the statute requires. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983). Section 7430(a) provides, inter alia, that a prevailing party may be awarded a judgment for reasonable litigation costs incurred in connection with a court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax. Reasonable litigation costs may not include attorneys fees in amounts *204 above $ 75 per hour, as adjusted for inflation, unless a "special factor" justifies a higher rate. Sec. 7430(c)(1)(B)(iii). [2] Congress enacted section 7430 as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 292(a), 96 Stat. 324, 572-574, and amended section 7430 most recently by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3746, applicable to proceedings commenced after November 10, 1988. [3]
A judgment may be awarded under section 7430 if a taxpayer (1) was the "prevailing party"; (2) exhausted the administrative remedies available to the taxpayer within the Internal Revenue Service; and (3) did not unreasonably protract *205 the proceedings. Sec. 7430(a), (b)(1), (4). Respondent concedes that petitioner has exhausted the administrative remedies available and that he did not unreasonably protract the proceedings. Therefore, the only issue is whether petitioner is the prevailing party. To qualify as the "prevailing party", the taxpayer must establish that (1) the position of the United States in the proceeding was not substantially justified; (2) the taxpayer has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) the taxpayer satisfies the applicable net worth requirements. Sec. 7430(c)(4)(A). Respondent concedes that petitioner meets the second and third criteria listed above. Respondent argues, however, that the position taken in the proceeding was substantially justified. Petitioner bears the burden of proving that respondent's position was not substantially justified. Rule 232(e); Dixson Corp. v. Commissioner, 94 T.C. 708, 714-715 (1990); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). *206 The fact that the Commissioner eventually loses or concedes a case is not, in and of itself, sufficient to establish that the Commissioner's position was not substantially justified. Sher v. Commissioner, 861 F.2d 131, 134 (5th Cir. 1988), affg. 89 T.C. 79 (1987); Sokol v. Commissioner, 92 T.C. 760 (1989); Wasie v. Commissioner, 86 T.C. 962, 969 (1986); Baker v. Commissioner, 83 T.C. 822, 828 (1984), vacated and remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986). As originally enacted, section 7430 required that a taxpayer establish that the position of the United States was unreasonable. In 1986, Congress adopted the standard applicable to the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412 (1988), by changing "unreasonable" to "not substantially justified". Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752; see H. Conf. Rept. 99-841, at II-801 (1986), 1986-3 C.B. (Vol. 4) 1, 801. The purpose of the amendment *207 was to conform section 7430 more closely to the EAJA. H. Conf. Rept. 99-841, supra, 1986-3 C.B. (Vol. 4) at 801. We have held consistently that the "substantially justified" standard is not a departure from the "reasonableness" standard. See Sokol v. Commissioner, supra at 763-764 n.7; Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). Accordingly, a position is "substantially justified" if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, 487 U.S. 552, 565 (1988) (construing similar language in EAJA). A position that merely possesses enough merit to avoid sanctions for frivoloushess will not satisfy this standard; rather, it must have a "reasonable basis both in law and fact". Id. at 564-565; see Hanson v. Commissioner, 975 F.2d 1150, 1153 (5th Cir. 1992); Rickel v. Commissioner, 900 F.2d 655, 665-666 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989). *208 The legislative history of section 7430 sets forth some guidelines for determining whether the Commissioner's conduct was unreasonable: The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).]
As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the judicial proceeding is the position taken by respondent in the answer. Sec. 7430(c)(7)(A); Sher v. Commissioner, 861 F.2d at 134-135. The underlying substantive *209 issue in this case was whether petitioner did not report income on his 1989 Federal income tax return. Respondent determined that petitioner received additional income, and issued a notice of deficiency. In his petition, petitioner alleged that deposits of nontaxable funds had been deposited in his bank account and that expenses paid by HII were not constructive dividends to petitioner. In the answer, filed July 28, 1993, respondent maintained the position taken in the notice of deficiency, while conceding the section 6654 addition to tax. Petitioner argues that respondent's position was not substantially justified because information was available to respondent indicating that the amounts determined to be unreported income were in fact nontaxable. As a general rule the taxpayer bears the burden of proving that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111, 115 (1933). However, petitioner suggests that respondent had the duty to specifically request documentation of bank deposits and corporate outlays. In fact, respondent had requested on October 23, 1992, that petitioner present documentation showing that the bank *210 deposits in excess of reported taxable income had nontaxable sources. Further, respondent did not consider the loan documentation to be conclusive evidence of a bona fide debt. It is not unreasonable for the Commissioner to require a taxpayer to corroborate its claims regarding a dispositive and unresolved fact. Baker v. Commissioner, 83 T.C. at 830; Fallin v. Commissioner, T.C. Memo. 1993-332; Caparaso v. Commissioner, T.C. Memo. 1993-255. The Commissioner is not required to concede a case until she receives the documentation necessary to prove the taxpayer's contentions regarding disputed facts. Brice v. Commissioner, T.C. Memo. 1990-355, affd. without published opinion 940 F.2d 667 (9th Cir. 1991). In view of the foregoing, we conclude that respondent had substantial justification for issuing the notice of deficiency and maintaining the position in her answer. [4] Consequently, petitioner was not the "prevailing party" for the purposes of section 7430 and Rule 231. *211 An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent argues that, if this Court finds petitioner to be the "prevailing party," there are no special factors justifying a higher rate for attorney's fees. Because of the outcome of this case, we need not decide this issue.↩
3. Petitioner filed his petition on June 22, 1993.↩
4. Petitioner suggested in the petition that respondent issued the notice of deficiency as punishment because petitioner would not agree to extend the statute of limitations. Petitioner apparently dropped this argument, noting in his memorandum in support of the motion for litigation costs that the refusal to extend the statute of limitations cannot be the basis for denying litigation costs. See Minahan v. Commissioner, 88 T.C. 492↩ (1987). However, we do not rely on petitioner's refusal to extend the assessment period as substantial justification for respondent's position.