LEI SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 13178-84
United States Tax Court
T.C. Memo 1990-430; 1990 Tax Ct. Memo LEXIS 447; 60 T.C.M. (CCH) 479; T.C.M. (RIA) 90430; August 8, 1990, Filed David M. Kirsch, for the petitioner. William D. Reese, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court on a motion for litigation costs under section 7430 and Rule 231. [1] Neither party requested a hearing, and the Court concludes that a hearing is not necessary for the proper consideration and disposition of this motion. Rule 232(a)(3). FINDINGS OF FACT Petitioner and Jon G. Smith (Jon) were married in 1971. They separated on January 19, 1980. On February 22, 1980, petitioner filed proceedings in California State court for dissolution of the marriage. An interlocutory judgment *449 of dissolution was granted on July 18, 1980. On August 4, 1980, petitioner and Jon filed a joint Federal income tax return for 1979. On December 11, 1980, a final judgment of dissolution of marriage was granted. On December 23, 1980, petitioner and Jon filed a joint application for tentative refund of tax for 1976, 1977, and 1978, attributable to the carryback of an unused investment credit claimed on their joint 1979 return. Respondent thereafter audited petitioner and Jon's 1979 return. Respondent requested, and on May 26, 1983, was provided with, a Form 872, Consent to Extend the Time to Assess Tax, extending the period of limitations on assessment for 1979 until June 30, 1984. The Form 872 bears the purported signatures of both petitioner and Jon. Petitioner, however, later challenged the authenticity of her signature. Respondent, on February 15, 1984, mailed a joint notice of deficiency to petitioner and Jon for 1976, 1977, 1978, and 1979. The notice was mailed to Jon's address only, and no separate notice of deficiency was sent to petitioner. Upon receiving the notice, Jon contacted David A. Klass (Klass), the accountant who prepared the 1979 return. Klass referred *450 Jon to a lawyer, Barry D. Lederman (Lederman). On May 9, 1984, Lederman timely filed a petition with this Court jointly in the names of petitioner and Jon, signed only by Lederman as counsel for petitioners. Lederman also prepared and filed with respondent a Form 2848, Power of Attorney, purporting to authorize him to represent both petitioner and Jon. The Form 2848 was signed by Jon but not petitioner. Lederman's signature appears next to Jon's signature in the space where petitioner's signature should have been. Subsequent to his being retained by Jon, Lederman enlisted the services of another lawyer, Barry L. Guterman (Guterman), to assist in negotiating the case with respondent. Guterman spent approximately one and one-half years on the case and was principally responsible for a settlement eventually reached with respondent. On May 4, 1987, a stipulated decision was entered in this case wherein Lederman agreed to the entry of a decision against petitioner and Jon. The stipulation was signed by Lederman as counsel for petitioner and Jon. Respondent made an assessment on June 22, 1987, in accordance with the stipulated decision and, in the summer of 1988, petitioner was *451 contacted by respondent's collection division for collection of the assessment. On September 26, 1988, petitioner filed a petition with this Court at docket No. 24774-88 alleging that the assessment against her was invalid because no notice of deficiency had been mailed to her. Respondent filed a motion to dismiss that petition on the grounds of res judicata. Such motion was subsequently granted by the Court. On February 16, 1989, petitioner filed in this case a motion to vacate prior decision and to dismiss for lack of jurisdiction (the motion to vacate and to dismiss or petitioner's motion), on the grounds that petitioner never authorized Lederman or any other person to file a petition on her behalf and that no petition had been filed by her; therefore, this Court had no jurisdiction over her. Petitioner attested to these allegations in a sworn declaration attached to her motion. Respondent and Lederman were ordered to respond to petitioner's motion. On March 27, 1989, a response entitled "Petitioner Jon Smith's Response to Motion to Vacate Prior Decision and Dismiss for Lack of Jurisdiction" was filed on behalf of Jon opposing petitioner's motion. This response contained *452 specific allegations that petitioner knew that a petition had been filed on her behalf by Lederman and that she did not object. The response was signed only by Lederman, who attached his own declaration which stated that Jon specifically authorized him to file the petition on behalf of both petitioner and Jon. Also on March 27, 1989, respondent filed an objection to petitioner's motion, alleging that Lederman was authorized to file a petition and enter into the stipulated decision on behalf of petitioner. Further, respondent alleged that the notice of deficiency was timely issued by virtue of Form 872, extending the period of limitations on assessment for 1979 until June 30, 1984. With respect to this last allegation, petitioner filed a reply to respondent's objection on April 3, 1989, for the first time alleging that petitioner "may not have" signed the Form 872 extending the period of limitations, and alleging further facts in support of her motion. On May 31, 1989, respondent received a letter from petitioner which stated that petitioner was definitely contesting the authenticity of her signature on the Form 872. Attached to this letter was a declaration by Jon wherein he *453 stated that petitioner was not involved in retaining Lederman; that he had no knowledge whether Lederman had independently contacted petitioner; and that, to the best of his knowledge, petitioner did not know that a notice of deficiency had been issued or that a petition had been filed with this Court. A hearing on petitioner's motion to vacate and to dismiss was held on June 14, 1989. Evidence and testimony was presented which further developed and clarified the sequence of events with respect to (1) whether Lederman was authorized to file the petition on petitioner's behalf, and (2) whether the consent to extend the period of limitations, Form 872, was invalid as to petitioner. In her testimony, petitioner attested to the truth of the allegations made in her filings with the Court. She further testified that she did not sign the Form 872 and that she did not recognize the signature thereon as being her own. Samples of petitioner's actual signature were submitted at the hearing, and petitioner declined to concede the authenticity of her signature on the most routine of documents such as, for example, a check issued to her accountant. Petitioner also declined to concede the *454 authenticity of her signature on the 1979 income tax return; however, her attorney orally stipulated that her signature on the return was genuine. Jon testified, consistent with his declaration provided to respondent two weeks prior to the hearing, that petitioner had no involvement in or knowledge of the proceeding before the Tax Court because he and petitioner had not been communicating in any way throughout this time period. Jon further testified that he did not know if petitioner had signed the Form 872. Finally, Jon testified that he did not request Lederman to represent petitioner or to file a petition on her behalf. Lederman testified on respondent's behalf. Respondent had not interviewed Lederman prior to the hearing and was not aware of what his testimony would be. Lederman testified that he knew Jon and petitioner were divorced and that, inconsistent with Jon's testimony, Jon had specifically retained him to represent both Jon and petitioner before the Tax Court. Lederman also was of the opinion that he derived authority to represent petitioner from Klass, the accountant who prepared the 1979 return, because Klass had the authority to represent petitioner and had *455 referred the taxpayers to him jointly. Through cross-examination of Lederman and the admission into evidence of certain documents from Lederman's files, it was established that, during the course of the pending litigation before this Court, neither Lederman nor Guterman was ever in communication with petitioner. Lederman testified that, several days prior to the date the original case was scheduled for trial, his office attempted, without success, to call petitioner and advise her of the basis of settlement. Both Lederman and Guterman, however, had advised Jon to obtain petitioner's consent to enter into the stipulated settlement. No such consent was obtained by Jon. The settlement documents filed with this Court were signed by Lederman as attorney for petitioner and Jon. Also at the hearing, Lederman disclosed that Jon had not authorized him to oppose petitioner's motion to vacate and to dismiss by filing a response on Jon's behalf or by making the representations that petitioner knew about the Tax Court proceedings. Lederman simply took it upon himself to file the response on behalf of Jon. The Court, however, had ordered Lederman to respond to petitioner's motion. Finally, *456 there was no evidence presented at the hearing to indicate that either Lederman or Guterman was involved with execution of the Form 872 which petitioner claims she never signed. The Form 872 was received by respondent on May 26, 1983; Lederman did not enter into the picture until after issuance of the notice of deficiency on February 15, 1984; and Guterman's services were enlisted thereafter by Lederman. After the hearing, the Court took petitioner's motion under advisement. Of his own accord, respondent then engaged the services of a handwriting expert to examine the purported signature of petitioner on the Form 872. This expert concluded that the signature on the Form 872 was not that of petitioner. On August 3, 1989, prior to issuance of a ruling by the Court, respondent filed a notice of concession conceding that the Court should grant petitioner's motion to vacate and to dismiss on the ground that the notice of deficiency was issued subsequent to expiration of the period of limitations because the Form 872 had not been signed by petitioner; therefore, it was invalid with respect to her. In an unpublished order dated September 6, 1989, this Court held that Jon did not have *457 authority to secure representation for petitioner; that petitioner was not aware of the proceeding before the Tax Court and did not ratify Lederman's representation of her in any respect; that petitioner had not expressly or impliedly authorized Lederman to represent her; and that Lederman did not derive authority to represent petitioner from Klass, the accountant who prepared the 1979 return. Accordingly, under authority of Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999 (1978), and Billingsly v. Commissioner, 868 F.2d 1081 (9th Cir. 1989), this Court granted petitioner's motion vacating the prior stipulated decision, dismissing the case as to her for lack of jurisdiction. The Court's ruling and the reasons advanced therein disregarded respondent's concession as a basis for granting petitioner's motion. The motion for litigation costs then followed. OPINION Section 7430 was enacted by section 292 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 572, to allow for the recovery of litigation costs *458 in "civil actions or proceedings commenced after February 28, 1983." Section 7430 was subsequently amended in significant respects by section 1551 of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, 2752, generally applicable to "amounts paid after September 30, 1986, in civil actions or proceedings, commenced after December 31, 1985," and by section 6239 of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3743, for "proceedings commencing" after November 10, 1988. This Court and the circuit courts of appeals have uniformly looked to the date the petition was filed as the relevant date for determining which version of section 7430 is applicable. See, e.g., Sher v. Commissioner, 861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79, 84 (1987); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). The petition was filed in this case on May 9, 1984, prior to the effective date of either the TRA 1986 or the TAMRA amendments to section 7430. Both petitioner and respondent, however, cite section 7430 as amended by TRA 1986 and TAMRA and present for decision by the Court questions *459 relevant only under TRA 1986 and TAMRA. The parties have apparently assumed that this "proceeding" commenced with the filing of petitioner's motion to vacate and to dismiss on February 16, 1989, and not with the filing of the original petition on May 9, 1984. See Rule 20(a). Though consideration of whether this proceeding commenced at a time other than when the petition was filed might have a significant impact in certain cases, [2] for our purposes here, the Court need not decide whether the statute effective in this case is section 7430 as enacted by TEFRA or as subsequently amended by TRA 1986 and TAMRA. As discussed below, this case is resolved on the question whether respondent's position was "unreasonable" under TEFRA, and "the substantially justified standard [applicable under TRA 1986 and TAMRA] is not a departure from the reasonableness standard." Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); compare 26 U.S.C. section 7430(c)(2)(A)(i) (September 3, 1982) with 26 U.S.C. section 7430 *460 (c)(4)(A)(i) (October 22, 1986). For the sake of convenience, the statutory citations and references herein will be made to section 7430 as in effect on May 9, 1984, the date the petition was filed. Section 7430(a) provides that a taxpayer may be awarded a judgment for *461 reasonable litigation costs incurred in any civil proceeding in a court of the United States, brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty. Reasonable litigation costs may be awarded only if petitioner was the "prevailing party" and "exhausted administrative remedies available to such party within the Internal Revenue Service." Section 7430(a) and (b)(2). An award of costs may not exceed $ 25,000 and may be made only for "reasonable" litigation costs "allocable to the United States and not to any other party to the action or proceeding." Section 7430(b)(1), (3), and (c)(1). Respondent concedes that petitioner exhausted the administrative remedies available to her within the Internal Revenue Service. The issues are whether petitioner was the "prevailing party" and, if so, whether petitioner's costs were both "reasonable" and "allocable to the United States." A taxpayer is considered the prevailing party only if the taxpayer establishes that: (1) the position of the United States in the civil *462 proceeding was unreasonable, and (2) the taxpayer has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented.
Section 7430(c)(2)(A). Respondent concedes that petitioner substantially prevailed in this case but denies that "the position of the United States in the civil proceeding was unreasonable." To resolve this question, the Court must first identify the point in time at which the United States is considered to have taken a position. The Ninth Circuit Court of Appeals, the court to which appeal of this case lies, has held that "the government's position both in its pre-litigation administrative proceedings and after the commencement of the litigation should be examined for reasonableness." Sliwa v. Commissioner, 839 F.2d 602, 606 (9th Cir. 1988).In this case, however, respondent's pre-litigation administrative position was unrelated to the issues raised by petitioner's motion to vacate and to dismiss. Also unrelated to the issues raised by petitioner's motion was respondent's litigation position on the merits of this case prior to the filing of petitioner's motion. Petitioner *463 does not contend that respondent's position prior to the filing of her motion to vacate and to dismiss was unreasonable. Accordingly, it is from the filing of petitioner's motion to dismiss and to vacate from which this Court must determine whether respondent's position was unreasonable. Petitioner has the burden of establishing that respondent's position was unreasonable. Rule 232(e). The decision whether respondent's position was unreasonable is based upon all the facts and circumstances as well as the legal precedents relating to the case. Sher v. Commissioner, supra at 84.The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained." Wasie v. Commissioner, 86 T.C. 962, 969 (1986).The fact that respondent eventually loses or concedes the case does not establish that the position taken was unreasonable. Sokol v. Commissioner, supra at 767; Baker v. Commissioner, 83 T.C. 822, 828-829 (1984), vacated and remanded on other issues 787 F.2d 637 (D.C. Cir. 1986). *464 Determining the reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. Cf. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). Petitioner alleges three different grounds why respondent's position in opposition to her motion to vacate and to dismiss should be held unreasonable: (1) Petitioner's allegation in docket No. 24774-88 that the notice of deficiency was not sent to her last known address, "if proven, would serve as an independent basis to deprive the Court of jurisdiction over Lei Smith, ab initio"; (2) respondent knew or should have known that petitioner did not authorize Lederman to represent her not later than the time respondent's opposition to petitioner's motion was filed; and (3) respondent knew or should have known that petitioner did not sign the Form 872 not later than the time of the hearing of this case. The Court considers each of these grounds in turn. Petitioner alleged in docket No. 24774-88 that the notice of deficiency was not sent to her last known address. This allegation, however, was never substantiated *465 and remains unproven. At no time in this proceeding has petitioner established that this Court had no jurisdiction over her on the theory that the notice of deficiency was not sent to her last known address. No evidence to support such a theory was offered by her. Now seeking to recover litigation costs, however, petitioner relies on a mere allegation previously made, abandoned, and admittedly unproven as evidence of unreasonable conduct. This ground, therefore, is rejected as a basis for the contention that respondent's position was unreasonable. As her second ground, petitioner contends that respondent should have conceded the case at the outset, thereby eliminating the need for a hearing, because respondent should have known that petitioner did not authorize Lederman to represent her based on petitioner's affidavit and other evidence which respondent should have secured at such time, such as Lederman's testimony. The Court does not agree. First, Rule 33(b) provides that the signature of petitioner's counsel constitutes a representation by him that he is authorized to represent the *466 party or parties on whose behalf the pleading is filed. There is an initial presumption, therefore, that counsel is authorized to represent all petitioners because no proof of authority is required. In the absence of contradictory evidence, respondent is entitled to rely on such a representation. Respondent in this case had in fact relied on Lederman's actions taken on behalf of petitioner without objection since 1984. At the time respondent's opposition was filed, petitioner's unsupported denial that Lederman was her authorized representative was the only evidence petitioner made available to respondent. Such evidence was clearly insufficient to render respondent's opposition unreasonable. Second, by questioning Lederman's authority in her motion to vacate and to dismiss, it was petitioner, not respondent, who assumed the burden of proof; in this case the burden of establishing that Lederman acted without authority. Abeles v. Commissioner, 90 T.C. 103, 106 (1988).Petitioner attempts to circumvent her burden of proof by arguing that respondent should not have opposed her motion unless respondent could prove that Lederman had authority to represent her. Respondent *467 simply had no obligation, in the circumstances of this case, to conduct an investigation and secure evidence which would disprove petitioner's allegations. Petitioner's failure to prove her case to respondent at an earlier point does not translate into an unreasonable position on respondent's behalf. See Estate of Warren v. Commissioner, T.C. Memo. 1990-377.Also with respect to petitioner's burden of proof, the Court notes that it was obvious to both petitioner and respondent that the merit of petitioner's motion depended primarily on the credibility of witnesses. It was not unreasonable for respondent to defer to the Court to pass upon the weight to be accorded to any testimony which petitioner might elicit at the hearing. The Court further notes that, on the same day that respondent's opposition was filed, an opposition to petitioner's motion was filed by Lederman in the name of Jon. This motion began with the statement that "PETITIONER JON SMITH MOVES, pursuant to Rules 53, 162, and 13 of the Court's Rules of Practice and Procedure, that the Decision entered in the above-titled case on May 4, 1987, not be vacated insofar as the same applies to Lei P. Smith" *468 and alleged that petitioner was aware of the filing of the petition as well as other matters relating to the case and that she did not object. This motion plainly appears to be a representation by Jon that he opposed petitioner's motion and that petitioner ratified the filing of the petition by her silence. Respondent's reliance on the Rule 33(b) presumption that Lederman was espousing Jon's position was warranted. [3] This filing by Lederman, along with the declaration of Lederman, perhaps equally as self-serving as petitioner's declaration, was evidence of the same caliber as petitioner's declaration and directly contradicted her allegations. Respondent's continuing opposition to petitioner's motion, therefore, was not unreasonable up to this point. *469 Petitioner further argues that the Form 2848, Power of Attorney, strongly supported her position because it was not signed by her; therefore, "it should have been clear that Lei Smith did not authorize Mr. Lederman at any time to represent her." Form 2848 is one of the acceptable means by which a representative is authorized to receive information and take certain action on behalf of a taxpayer in administrative proceedings before the Internal Revenue Service. Form 2848, by its own terms, however, authorizes representation of taxpayers only "before any office of the Internal Revenue Service." Form 2848 is not a requirement for an attorney to represent a taxpayer before this Court. Moreover, it has not been shown that respondent even relied on the Form 2848 as a basis for negotiating with Lederman or Guterman, which resulted in the stipulated decision closing this case. The absence of petitioner's signature on the Form 2848 does not establish that Lederman was not authorized to represent her before this Court; therefore, respondent's failure to concede the case on such a basis was not unreasonable. *470 Petitioner's attempt to bootstrap lack of authority to file the petition to the absence of her signature on the Form 2848 is without merit. As her final ground, petitioner argues that respondent should have obtained the handwriting expert's opinion as to the authenticity of her signature on the Form 872 as soon as authenticity was placed in issue because, if respondent had done so, the report would have been rendered in advance of the hearing, making the hearing unnecessary, presumably because respondent would have conceded the issue earlier. First, this argument overlooks the fact that it was petitioner, not respondent, who claimed that her signature was not authentic. Petitioner, therefore, not respondent, bore the burden of proving that the signature was not authentic. Respondent was under no obligation to disprove petitioner's contention. Respondent chose, as he had every right to do, to allow the hearing to proceed without the benefit of expert opinion. After the hearing, respondent certainly was under no obligation to seek the services of an expert. Respondent, nevertheless, procured the opinion of an expert and abided by such expert's finding by filing a concession with *471 the Court. Such action by respondent was clearly not unreasonable. Second, the ultimate finding of this Court was that there was no jurisdiction over petitioner, not because of an invalid Form 872, but because Lederman never had authority to file a petition with this Court on petitioner's behalf. One can fairly conclude from this that, even if respondent had initially obtained an expert opinion and presented it at the hearing, the Court's ruling would have issued on the same basis. This conclusion is borne out by the fact that the validity of the Form 872, a question relevant only as to expiration of the period of limitations, which is a defense on the merits and not a plea to jurisdiction, is a legally insufficient ground upon which this Court may vacate a decision which has become final. See Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir. 1988). The facts and circumstances clearly demonstrate that respondent was reasonable in allowing the matter to proceed to a hearing and *472 allowing petitioner to prove her case. In the end, it appears that the only factor in petitioner's favor is that respondent lost the case. This fact is far from sufficient to entitle her to an award of costs. Sokol v. Commissioner, supra.Having found that respondent's position was not unreasonable, the Court need not decide the remaining issues. Petitioner's motion for litigation costs is denied. An appropriate order will be issued . Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For example, TEFRA does not provide for recovery of administrative costs, as does TAMRA; TEFRA limits the amount recoverable to $ 25,000, unlike TRA 1986 and TAMRA; under TRA 1986 and TAMRA, recovery is precluded where the taxpayer fails to meet certain net worth limitations, unlike TEFRA; further, TRA 1986 and TAMRA, respectively, define and redefine the phrase "position of the United States," whereas TEFRA contains no definition of this phrase. Compare 26 U.S.C. sec. 7430 (September 3, 1982), 26 U.S.C. sec. 7430 (October 22, 1986), and 26 U.S.C. sec. 7430↩ (November 10, 1988).
3. Rule 33(b)↩ also provides that "the signature of counsel or a party constitutes a certificate by him that he has read the pleading; that, to the best of his knowledge, information, or belief, there is good ground to support it; that it is not frivolous, and that it is not interposed for delay."