T.C. Memo. 1996-91


UNITED STATES TAX COURT


MARY LEE SHARER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22562-92, 13219-93.     Filed February 29, 1996.


Roderick L. MacKenzie, for petitioner.

Kathryn K. Vetter, for respondent.


MEMORANDUM OPINION


PARR, Judge:  These cases were assigned to Special Trial
Judge D. Irvin Couvillion pursuant to section 7443A(b)(4)[1] and
Rules 180, 181, and 183.  The Court agrees with, and adopts, the
Opinion of the Special Trial Judge, which is set forth below.

------

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, <u>Special Trial Judge</u>:  These cases are before the Court on petitioner's motions for award of litigation and administrative costs pursuant to section 7430 and Rule 231. Neither party requested a hearing, and the Court concludes that a hearing is not necessary for the proper disposition of these motions.  Rule 232(a)(3).  These cases were consolidated for purposes of trial, briefing, and opinion.  Rule 141(a).

## Background

The motions for administrative and litigation costs involve petitioner's 1988 and 1989 tax years.[2]  In the notice of deficiency for 1988, respondent determined a deficiency in income tax of $26,691 and additions to tax under sections 6651(a)(1), 6653(a)(1), and 6661 in the amounts of $6,665, $1,353, and $6,673, respectively.  In the notice of deficiency for 1989, respondent determined a deficiency in income tax of $12,399 and an accuracy-related penalty of $2,480 under section 6662(a).

---

[2]  Petitioner also has before the Court a motion for litigation and administrative costs in docket No. 25899-91 involving her 1986 and 1987 tax years.  That case was tried, and the opinion of the Court is reported as T.C. Memo. 1994-453.  Several of the issues litigated in petitioner's 1986 and 1987 tax case are the same as or similar to the issues involving petitioner's 1988 tax year.  Where necessary, therefore, the Court here relies on the findings of the Court in T.C. Memo. 1994-453 (involving tax years 1986 and 1987) as such findings relate to the merits of petitioner's motion for 1988.

Petitioner filed separate petitions for each of the notices of deficiency. At the time the petitions were filed, and during the years at issue, petitioner's legal residence was Sacramento, California.

The subject cases did not proceed to trial. The parties filed separate stipulations of settlement for each docketed case. For tax year 1988, the parties stipulated that petitioner had a deficiency in tax of $544 and an addition to tax under section 6653(a)(1) of $27, and no additions to tax under sections 6651(a)(1) and 6661. For tax year 1989, the parties stipulated that petitioner had a deficiency in tax of $150 and a penalty of $30 under section 6662(a). No decisions have been entered as a result of petitioner's motions for administrative and litigation costs. Rules 231(a)(2)(C), 232(f).

Petitioner is an accountant. In 1975, she married Michael Sharer (Mr. Sharer), and one child, Derek, was born of the marriage in 1986. Petitioner's marriage to Mr. Sharer was a stormy one; however, neither she nor Mr. Sharer filed for divorce or legal separation. The Court in Sharer v. Commissioner, T.C. Memo. 1994-453 (involving petitioner's 1986 and 1987 tax years), found that petitioner and Mr. Sharer were not living together but were maintaining separate households beginning in early 1986. The same factual situation existed during 1988 until Mr. Sharer's death on June 8, 1988.

Mr. Sharer was a certified public accountant who, beginning in 1980, operated an accounting practice, Sharer Accountancy (business), as a sole proprietorship. In 1986, petitioner began helping her husband with his business. Petitioner had authority to write checks on the accounts of the business. During 1986, 1987, and 1988, petitioner and Mr. Sharer wrote checks to petitioner on the business accounts which were annotated as "spousal wages".

During 1986, 1987, and 1988, petitioner and Mr. Sharer also shared a joint personal checking account, into which petitioner deposited her "spousal wages", and Mr. Sharer deposited his draw from the business. Petitioner also shared a joint checking account with her mother, Mary McDonald.

After Mr. Sharer's death, petitioner worked as an independent contractor for the Maynard & McDonald partnership (M & M) and Gold Country Financial, Inc. (Gold Country). M & M and Gold Country were in the business of preparing tax returns, providing assistance to clients in tax-related matters, and providing accounting services. Petitioner's father, Bill McDonald, was a partner in M & M. Respondent's Information Returns Master File Transcript did not show that either M & M or Gold Country filed Forms 1099 or W-2 with the Internal Revenue Service indicating wages or other compensation paid to petitioner. However, petitioner reported Schedule C gross

receipts of $7,160 on her 1989 return.[3]  In addition, Gold Country paid petitioner an automobile allowance during each of the years at issue (1988 and 1989).  This automobile allowance was determined by respondent to constitute income for the 2 years in question.

By letter dated November 16, 1990, the Internal Revenue Service (IRS) informed petitioner that her 1986, 1987, and 1988 income tax returns had been selected for examination.  In the letter, an audit appointment was scheduled for December 12, 1990, and attached to the letter was an Information Document Request (IDR), requesting that petitioner provide certain information, which included bank records and information on nontaxable sources of income.  Petitioner did not provide the requested information to the IRS.

On January 17, 1991, the IRS sent another letter and a second IDR, this time to petitioner's attorney.  Petitioner again did not provide the requested records.  As a result, the IRS summonsed petitioner's bank for information.  The IRS was unable to get copies of all of petitioner's bank records, such as copies of all checks deposited and all checks written.

A notice of deficiency for 1988 was issued on August 11, 1992.  In that notice, respondent determined net income

---

[3]     Petitioner listed the name of her Schedule C business as "Mary Lee Sharer".

adjustments totaling $83,845. Consistent with the determinations in the notice of deficiency for 1986 and 1987, respondent determined that, for 1988, petitioner was required, under California's community property law, to include in her income one-half of the net income, or $40,415, of Sharer Accountancy, her late husband's accounting proprietorship. Other adjustments totaled $25,205, which included automobile allowances paid to petitioner by Gold Country, unaccounted and unexplained deposits to petitioner's bank accounts, and personal expenses of petitioner paid by a third party. Respondent also determined that $20,000 petitioner received from a law firm during 1988, as well as a State income tax refund of $1,312, constituted gross income. All of these adjustments, except for the $40,415 from Sharer Accountancy, were based upon bank records and information provided to respondent by payors.

Petitioner filed her petition on October 9, 1992, contesting the deficiency notice for 1988. On December 10, 1992, respondent filed an answer. On September 27, 1993, an Appeals Officer of respondent mailed a letter to petitioner's attorney setting out the issues and inviting the attorney to submit evidence in support of petitioner's case, noting that the case was calendared for trial on January 24, 1994. Respondent also suggested that petitioner sign a Stipulation to be Bound by the finding of the Court for tax years 1986 and 1987 with respect to the issue of

the community income from Sharer Accountancy and all other issues related thereto.  Neither petitioner nor her attorney responded to this letter, nor were any additional documents submitted to respondent.  However, because of the pending case involving petitioner's 1986 and 1987 tax years, the parties agreed to continue generally the trial of this case.

On September 8, 1994, the opinion in petitioner's 1986 and 1987 case was rendered.  See Sharer v. Commissioner, T.C. Memo. 1994-453.  This Court found that petitioner and Mr. Sharer were living separate and apart during 1986 and 1987, and that the net income from Sharer Accountancy was Mr. Sharer's separate income and was not community income.  The Court also found that petitioner had to include in income a portion of the amounts paid to her as "spousal wages".  The Court found that the remainder of the payments represented repayment of loans made by petitioner to Mr. Sharer, and such payments were not income.

On October 20, 1994,[4] the same Appeals Officer contacted petitioner's attorney again to see if the 1988 tax year could be settled in light of the Court's opinion for the 1986 and 1987 tax years.  By letter dated November 2, 1994, petitioner's attorney

---

[4]    From this point on, it appears from the record of both cases that all correspondence and communications between the parties dealt with both years 1988 and 1989.  The issues considered by the parties in subsequent correspondence related to either year or both years.  As discussed later in this opinion, the petition challenging respondent's determinations for the 1989 tax year was filed on June 24, 1993.

provided some documentation to respondent. The record does not indicate what information was enclosed with this letter. By letter dated January 10, 1995, petitioner's attorney provided further documentation to respondent. Again, the record does not indicate what information was provided in this letter. This letter, however, indicated petitioner's inability to locate documentation justifying the "auto expense", one of the adjustments in the notice of deficiency that respondent determined was taxable income.

On March 3, 1995, respondent sent a letter to petitioner's attorney summarizing the issues in the 1988 and 1989 cases. In the letter, respondent conceded the 1988 $40,415 community property income adjustment as a result of the opinion in Sharer v. Commissioner, supra. Respondent also conceded part of the 1988 $25,205 adjustment for additional earned income but requested additional documentation as to the other parts of this adjustment and the $20,000 adjustment for a payment received by petitioner from a law firm during 1988. Petitioner claimed that the $20,000 payment was a personal injury settlement, which was not taxable under section 104(a)(2). Respondent requested further information on this item because some of respondent's documentation indicated that petitioner's claim included taxable as well as nontaxable elements. Finally, respondent conceded the adjustment for the State income refund, and also allowed

petitioner itemized deductions in excess of those allowed in the notice of deficiency.

On March 19, 1995, petitioner's attorney provided more information to respondent in response to the March 3, 1995, letter. Based on this documentation, respondent, in a letter dated March 22, 1995, conceded additional income adjustments and the substantial understatement penalty under section 6661. In the same letter, respondent sent copies of a proposed stipulation settlement.

By letter dated March 29, 1995, respondent's Appeals Officer confirmed by letter to petitioner's attorney a basis for settlement of the case for 1988 and included an audit statement reflecting the settlement and a decision to be filed with the Court. The decision was signed by the parties and filed with the Court as a Stipulation of Settlement in view of petitioner's simultaneous filing of the motion for litigation costs. Rule 231(c).

With respect to the 1989 tax year, petitioner was first informed by letter dated December 8, 1992, that her 1989 return would be examined. Attached to that letter was an IDR requesting petitioner to provide certain information that included bank records and information on nontaxable income. On December 18, 1992, the IRS agent assigned to the case met with petitioner's attorney to discuss some of the issues in the case. However,

none of the requested documents was provided to the agent.  The

agent then summonsed petitioner's bank records on January 7,

1993.  On February 3, 1993, petitioner's attorney sent a letter

to the agent indicating that a response from petitioner was

enclosed with the letter.  The record, however, does not include

petitioner's response.

On April 7, 1993, respondent issued a notice of deficiency

for petitioner's 1989 tax year.  Based on information derived

from bank records and information obtained from audits of related

taxpayers, respondent determined net income adjustments totaling

$35,403.  By far, the largest adjustment was additional income

totaling $42,831, which consisted essentially of the same kind of

items as generated the $25,205 adjustment for petitioner's 1988

tax year.[5]  Other adjustments included $150 taxable Social

---

[5]     Specifically, the items consisted of:

| | |
|---|---|
| $ 3,000 | Automobile allowance paid to petitioner by Gold Country |
| 9,580 | Checks from petitioner's mother deposited in petitioner's checking account |
| 800 | A deposit of currency in petitioner's checking account |
| 25,258 | Deposited into petitioner's M & B Investment Club account |
| 3,904 | Adjustment for personal living expenses |
| 7,449 | Amount received for sale of the Sharer Accountancy client list |
| $49,991 | TOTAL |

Since petitioner had reported $7,160 of the above items as
Schedule C trade or business income, the $42,831 adjustment
represented net unreported income.

Security income, computational adjustments for self-employment tax and the earned income credit, an allowance for additional itemized deductions, and imposition of the accuracy-related penalty under section 6662(a).

Petitioner filed her petition on June 24, 1993. Respondent filed an answer on August 17, 1993.

On September 10, 1993, the same IRS Appeals Officer considering petitioner's 1988 tax year mailed a letter to petitioner's attorney suggesting a conference for settlement of the case for 1989, without trial, or to submit additional evidence to support petitioner's case. Petitioner did not respond to this letter, nor was any additional documentation provided.

On October 20, 1994, the Appeals Officer mailed another letter to petitioner renewing the offer to discuss the issues for both the 1988 and 1989 cases. The letter noted this Court's opinion in Sharer v. Commissioner, T.C. Memo. 1994-453 (with respect to petitioner's 1986 and 1987 tax years). Petitioner's attorney responded to this letter on November 2, 1994, and provided some information regarding the 1989 year. The record is unclear, however, as to what information was actually sent to respondent. On November 22, 1994, the Appeals Officer responded to the November 2, 1994, letter from petitioner's attorney acknowledging receipt of the information.

By letter dated January 10, 1995, petitioner's attorney provided to respondent additional information and statements from petitioner.

On March 3, 1995, the Appeals Officer sent a letter to petitioner conceding some adjustments, contesting others, and requesting additional information about bank deposits. More specifically, the letter stated, in pertinent part, that respondent would concede $7,444 of the $7,449 adjustment for payments from Hoffelt, et al., for the Sharer accountancy client list, that respondent would concede the adjustment of $3,904 personal living expenses paid in cash, and that petitioner would concede that the auto allowance of $3,000 from Gold Country was includable in income. Furthermore, the Appeals Officer requested additional information about $9,580 in checks written to petitioner by Mary McDonald and $25,258 in funds deposited into petitioner's investment account.

By letter dated March 19, 1995, petitioner's attorney provided an affidavit from Mary McDonald with respect to the $9,580 in checks written by her to petitioner and the $25,258 deposited into petitioner's investment account.

By letter dated March 22, 1995, the Appeals Officer conceded all of the income items except the $3,000 auto allowance that petitioner conceded was income. Respondent also conceded the $150 Social Security adjustment. Petitioner conceded the

accuracy-related penalty under section 6662(a) and the computational adjustments.  All issues for 1989, therefore, had been settled.

In the same letter, the Appeals Officer enclosed decision documents and audit statements that would close the case for 1989.  These documents were signed by petitioner and forwarded to respondent in a letter dated March 31, 1995.  The stipulated decision was then filed by this Court as a Stipulation of Settlement in view of petitioner's simultaneous filing of the motion for litigation costs.  Rule 231(c).

A taxpayer who substantially prevails in an administrative or court proceeding may be awarded a judgment for reasonable costs incurred in such proceedings.  Sec. 7430(a)(1) and (2).  A judgment may be awarded under section 7430 if a taxpayer (1) was the "prevailing party"; (2) exhausted the administrative remedies available to the taxpayer within the Internal Revenue Service; and (3) did not unreasonably protract the proceedings.  Sec. 7430(a), (b)(1), (b)(4).  A taxpayer must satisfy each of these three requirements to be entitled to a judgment under section 7430.  Respondent concedes that petitioner exhausted the administrative remedies available.  The Court is left to decide (1) whether petitioner was the prevailing party, and (2) whether petitioner did not unreasonably protract the proceedings.

To qualify as the "prevailing party", the taxpayer must establish that (1) the position of the United States in the proceeding was not substantially justified; (2) the taxpayer substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) the taxpayer satisfies the applicable net worth requirements.  Sec. 7430(c)(4)(A).  Respondent concedes that petitioner meets the second and third criteria listed above. Respondent argues, however, that the position taken in both proceedings was substantially justified.  Rule 232(e); <u>Dixson Corp. v. Commissioner</u>, 94 T.C. 708, 714-715 (1990); <u>Gantner v. Commissioner</u>, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).  Accordingly, the Court must decide, with respect to both cases, whether "the position of the United States in the proceeding was not substantially justified."  <u>Gantner v. Commissioner</u>, 905 F.2d at 245.

In deciding this issue, the Court must first identify the point in time at which the United States is considered to have taken a position and then decide whether the position taken from that point forward was not substantially justified.  The "not substantially justified" standard is applied as of the separate dates that respondent took a position in the administrative proceeding as distinguished from the proceeding in this Court. Sec. 7430(c)(7)(A) and (B); <u>Han v. Commissioner</u>, T.C. Memo. 1993-

386.  For purposes of the administrative proceedings, respondent took a position on August 11, 1992, and April 7, 1993, the dates the notices of deficiency for tax years 1988 and 1989, respectively, were issued.  Sec. 7430(c)(7)(B).  For purposes of the proceeding in this Court, respondent took positions for the 1988 and 1989 tax years on December 11, 1992, and August 18, 1993, respectively, the dates respondent filed the answer in each of the cases.  See Huffman v. Commissioner, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), affg. in part, revg. in part on other grounds, and remanding T.C. Memo. 1991-144.

Whether respondent's position was not substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case.  Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, supra at 565; Powers v. Commissioner, 100 T.C. 457, 470-471 (1993).  A position that merely possesses enough merit to avoid sanctions for frivolousness will not satisfy this standard; rather, it must have a "reasonable basis both in law and fact".  Pierce v. Underwood, supra at 564-565.

The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained". Wasie v. Commissioner, 86 T.C. 962, 969 (1986). The fact that respondent eventually loses or concedes the case does not establish an unreasonable position. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Baker v. Commissioner, 83 T.C. 822, 828 (1984), vacated on other issues 787 F.2d 637 (D.C. Cir. 1986). The reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. Cf. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The taxpayer has the burden of establishing that respondent's position was unreasonable. Rule 232(e).

At all relevant times, respondent's position in both of petitioner's cases was that, using the bank deposits method, respondent properly calculated, in the notices of deficiency, petitioner's income tax for 1988 and 1989. Petitioner argues that respondent's position was not reasonable as a matter of law or fact. As a matter of law, petitioner argues that respondent's use of the bank deposits method, an indirect method in determining petitioner's taxable income, was not reasonable.

This Court has long held that the bank deposits method of determining taxable income is reasonable when, as in the present case, taxpayers fail to maintain, or submit for examination by

the Commissioner, complete and adequate books and accounts for their income-producing activities. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Prior to respondent's issuance of the notices of deficiencies for 1988 and 1989, respondent sent letters to petitioner requesting she provide information described in the IDR's accompanying the letters. Petitioner did not present any of these records for either year at issue. As a result, it was necessary, and reasonable, for respondent to use the bank deposits method in determining petitioner's income for 1988 and 1989. The Court notes that respondent's determinations were not based upon information petitioner voluntarily submitted, but rather upon information obtained from summonses on banks and information from payors reported to the IRS. Accordingly, we reject petitioner's argument that respondent's use of the bank deposits method was unreasonable as a matter of law.

In deciding whether petitioner is entitled to administrative costs, the Court takes into account the information available to respondent from the date the notices of deficiency were mailed. The notice of deficiency for 1988 was mailed on August 11, 1992. The notice of deficiency for 1989 was mailed on April 7, 1993. With respect to both years, between the time that the notices of deficiency were mailed and the time respondent's answers were filed, petitioner provided no records or pertinent documentation

to respondent.  Accordingly, respondent was substantially justified, in fact and in law, in taking and maintaining the positions determined in the notices of deficiency.  Petitioner's motions with respect to administrative costs are, therefore, denied for both years at issue.

With respect to litigation costs, the Court must look to the information available to respondent at the time the answers were filed and from that point forward.

Respondent's answer in the 1988 case was filed on December 10, 1992.  On September 27, 1993, respondent mailed a letter to petitioner requesting that she submit evidence in support of her position.  Petitioner did not respond to this letter.  After the decision was rendered in Sharer v. Commissioner, T.C. Memo. 1994-453, on September 8, 1994, respondent contacted petitioner again to see if the 1988 case could be settled and, as to those issues common to the 1986, 1987, and 1988 tax years, respondent agreed to abide by the Court's opinion that dealt with petitioner's 1986 and 1987 years. Petitioner sent respondent some documentation with a letter dated November 2, 1994, and further documentation with a letter dated January 10, 1995.  Although the information provided in these letters is not shown in the record, it is evident from the language in the several letters between the parties that petitioner was moving in the direction toward providing

information that respondent had long sought. By letter dated March 3, 1995, respondent conceded several of the adjustments in the notice of deficiency. In the same letter, respondent asked for additional documentation with respect to the adjustment for earned income. After receiving the additional information from petitioner on March 19, 1995, respondent conceded, 3 days later, more of the income adjustments and the substantial understatement penalty. As a result, a settlement was reached by the parties.

The record of the case clearly shows that respondent's litigation position was reasonable. It is apparent from the record that petitioner provided very little in the way of documentation until such time as the case progressed toward an ultimate trial date. The correspondence in the record does not indicate or show any unreasonableness on the part of respondent's Appeals Officer, nor does the correspondence from petitioner's attorney to the Appeals Officer indicate or express any frustration or complaints about respondent's positions or requests for additional information. Based on this record, therefore, this Court holds that petitioner is not entitled to litigation costs for the 1988 case.

With respect to petitioner's 1989 tax case, the correspondence described above with respect to the 1988 tax case also dealt with the 1989 tax year. For the same reasons

described above, the Court holds that petitioner is not entitled to litigation costs for the 1989 case.

As the Court has decided that respondent's position was substantially justified in both the administrative and Court proceedings for both years, it is not necessary for the Court to decide whether petitioner unreasonably protracted the proceedings and the amount of petitioner's administrative and litigation costs.  Petitioner's motions, therefore, will be denied.

<u>Appropriate orders and decisions will be entered.</u>